FILED'11 MAR 31 14:16USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LYDIA STRAPPINI,

              Plaintiff,

      v.

DAVID SIDERAS, ALBINA SIDERAS, and
HOUSING AUTHORITY OF PORTLAND,
a nonprofit Oregon corporation,

              Defendants.

Civil No. 08-1393-AC
OPINION AND ORDER

HAGGERTY, District Judge:

     A Findings and Recommendation [86] in this matter was referred to this court. The

Findings and Recommendation recommends granting in part and denying in part defendants'

Motions for Summary Judgment [48, 52]. Defendants filed timely objections to the Findings and

Recommendation. For the following reasons, this court adopts the Findings and

Recommendation in part.

**<u>BACKGROUND</u>**

     The facts of the case, and the legal standards applicable to the issues advanced, are

presented thoroughly in the Findings and Recommendation. Plaintiff's detailed and duplicated

reiteration of the factual background in her Responses to the objections notwithstanding, a

summary of only the most relevant facts is sufficient at this stage. Plaintiff Lydia Strappini

1 - OPINION AND ORDER

(plaintiff) has received rent assistance from defendant Housing Authority of Portland (HAP) under the "Section 8 Housing Choice Voucher Program" (Section 8) for many years. Plaintiff and her son Ian Strappini (Ian) initiated paperwork in 2003 to authorize Ian to reside with her as a live-in aide. This process was never completed.

In April 2004, plaintiff entered into a lease agreement regarding a residence (the rental property). There is no dispute that under the terms of this lease, and pursuant to the requirements for Section 8 assistance, plaintiff was the only authorized occupant of the rental property. Documentation accompanying the lease agreement instructed plaintiff that the landlord and HAP both had to provide prior written approval before additional people could be added to the household.

In February 2005, defendants David and Albina Sideras purchased the rental property. In April 2006, plaintiff sued the Siderases as her landlords, alleging disability discrimination, violations of landlord-tenant law, breach of contract, and negligence. This suit was settled in May or June 2007.

In May 2007, Ian moved some of his possessions, including his mattress, into plaintiff's residence. Ian was never screened by HAP and was not authorized to reside at the property.

On June 15, 2007, plaintiff received a "Notice of Violation" issued by David Sideras, which advised plaintiff that she was not authorized to sublet her residence or to have guests stay for extended periods. This Notice indicated that plaintiff was suspected of having guests in her residence for three or four weeks.

Plaintiff disputed the Notice, responding that Ian was at the property to assist plaintiff with her life threatening medical conditions, and that he had not resided there for three or four

2  - OPINION AND ORDER

weeks, as alleged. Defendant David Sideras subsequently contacted HAP to inquire whether plaintiff had obtained permission to house an additional resident. He disclosed his suspicion – which was supported by information he had received and observations he had made – that plaintiff had an unauthorized guest residing with her.

HAP initiated an investigation. Fraud Inspector David Hohnstein (Hohnstein) rescinded the investigation after an initial effort that was unsuccessful in documenting conclusively that Ian was residing with plaintiff.

In October 2007, plaintiff received a second Notice of Violation that asserted that she housed unauthorized tenants. Plaintiff was advised that she could cure the violation by obtaining approval from HAP.

On November 9, 2007, an attorney for Sideras sent another notice to plaintiff alleging violations of her rental agreement. There is no dispute that this letter advised plaintiff that she could cure the violation by either permanently removing the additional occupant from the premises, or by obtaining approval from HAP for the additional occupant. Plaintiff was advised that if she cured the violation, her tenancy would continue.

Plaintiff sought help from HAP, but was unsuccessful in obtaining assistance. An entry in her file made on November 26, 2007, reads "No Transfer please! Termination Proposed[.]" A HAP notation on December 19, 2007, recorded that defendant Sideras was evicting plaintiff for having an unauthorized guest and that HAP would "wait and see what happens." Various entries are marked with the word "Fraud." Hohnstein explained that he marks entries with that term as a tracking method, and that the HAP files are confidential.

3  - OPINION AND ORDER

Plaintiff responded to the letter from counsel on December 11, 2007, asserting that Ian did not live with her and that she had submitted a reasonable accommodation form to address her need for Ian's occasional assistance. She also complained of notices that Sideras had issued alleging that she had failed to pay her rent or to do so timely.

In January 2008, Sideras filed a "Residential Eviction Complaint" in Multnomah County Circuit Court, seeking eviction based on a 30-day notice with stated cause. Plaintiff opposed eviction, asserting a variety of defenses, including the defense that the eviction was being sought as a result of disability discrimination.

A "forcible entry and detainer" (FED) trial was conducted, and plaintiff was evicted on or around January 21, 2008. Plaintiff has alleged that after her eviction, she experienced difficulty in finding other housing. She believes that the difficulty was related to the documentation that HAP created and maintained about its investigation of her conduct.

Plaintiff found suitable housing in October 2008, and has continued to receive Section 8 assistance. In November 2008, plaintiff initiated a lawsuit against HAP and David and Albina Sideras. Plaintiff has alleged claims for disability discrimination under the Federal Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12201 *et seq.*; Oregon Revised Statutes (ORS) 659A.145 and the Oregon Residential Landlord Tenant Act (ORS 90.385). She also asserts claims for defamation.

Defendant HAP and the Siderases move separately for summary judgment on all claims. The Findings and Recommendation concluded that HAP's motion should be denied in its entirety, and that the Siderases' motion should be granted only as to the ADA claim, and as to the defamation claim against Albina Sideras. Both defendants have advanced objections.

4  - OPINION AND ORDER

## STANDARDS

When a party objects to any portion of a Findings and Recommendation, the district court must conduct a *de novo* review. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Aspects of the Findings and Recommendation to which no objections are raised are evaluated and are adopted unless clear error appears on the face of the record. *Campbell v. United States District Court*, 501 F.2d 196 (9th Cir. 1974). No clear error exists regarding any recommendation.

The court notes that the standards for evaluating summary judgment motions underwent modification recently. A court now shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Magistrate Judge's thorough analysis was consistent with this modified standard. The following analysis was undertaken in compliance with the modified standard, as well.

## DISCUSSION

### 1.    Objections by the Sideras defendants

The first objection that the Siderases advance asserts that the Findings and Recommendation erred in concluding that the doctrine of issue preclusion is inapplicable in this lawsuit as to plaintiff's disability discrimination claims.

Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding. *Nelson v. Emerald People's*

*Util. Dist.*, 862 P.2d 1293, 1296 (Or. 1993) (citations omitted).  The doctrine requires five

essential elements: (1) the issue in the two proceedings is identical; (2) the issue was actually

litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party

sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party

sought to be precluded was a party or was in privity to a party to the prior proceeding; and (5) the

prior proceeding was the type to which courts give preclusive effect.  *Id.* at 1296-97 (citations

omitted).

 Defendants object to the Findings and Recommendation's conclusion regarding the

second "essential element" described above – that the issue of plaintiff's allegations of disability

discrimination was not "actually litigated" at the FED trial, and so is not precluded in this action.

This contention appears persuasive, particularly because the Findings and Recommendation

acknowledged that at the FED trial, plaintiff "argued that 'her eviction was the product of

disability discrimination'" and that this defense was rejected by the court.  Findings and

Recommendation at 9 (quoting Dfts. Concise Statement of Material Fact, ¶ 5,6).

 A recent decision by the Oregon Court of Appeals is helpful in determining whether

"actual litigation" occurred in a prior proceeding.  In *Certain Underwriters at Lloyd's London et*

*al. v. Mass. Bonding & Ins., et al.*, 230 P.3d 103, 109-110 (Or. Ct. App. 2010), the court

addressed issue preclusion and responded to arguments that an issue regarding liability for

defense costs was precluded in a subsequent action because of "certain statements" and certain

"signals" made by the tribunal in a prior proceeding.  The court ruled that "[g]iven the fact that

the [earlier tribunal] never actually made a ruling on the [issues proposed for preclusion],

defendants' reliance on the [tribunal's] statements during those hearings is unavailing."  *Id.* at 110

(citing *Nelson*, 862 P.2d at 1296, and quoting that issue preclusion requires that the issue "was actually litigated and was essential to a final decision on the merits in the prior proceeding").

In this case, the Findings and Recommendation concluded that issue preclusion on the disability discrimination claims was inapplicable primarily because (1) the FED hearing transcript indicated that no "meaningful discussion" took place regarding whether plaintiff's disabilities "gave rise to discrimination by the Siderases;" (2) the FED referee explicitly limited the scope of the examination to whether the 30-day eviction notice was valid, and (3) the referee expressed doubt as to the propriety of broadening the scope of the adjudication beyond the contractual relationship between plaintiff and HAP to discuss federal law and "reasonable accommodation." Findings and Recommendation at 20-21 (citations and quotations omitted).

The Siderases advance persuasive arguments regarding the parties' briefing before the FED court that addressed disability discrimination allegations, plaintiff's opportunities to testify in detail about her disabilities and her perceptions of how she was treated because of them, and the scope of the issue as presented in the record and the testimony to the referee. Although the question is close, the court adopts the Findings and Recommendation's conclusion that – despite plaintiff's references to her disabilities in defending herself against eviction – the prior proceeding lacked any actual litigation of disability discrimination claims, and offered no indication that a determination of those claims was "essential" to the referee's final decision on the merits in the FED trial. Instead, this court's examination of the record supports the Findings and Recommendation's conclusion that the referee's ruling is fairly construed as pointedly disavowing any intent to incorporate findings or conclusions about plaintiff's discrimination claims and other potential federal matters. Accordingly, this objection is overruled.

7  - OPINION AND ORDER

These defendants also object to the Findings and Recommendation's conclusion that factual disputes preclude granting summary judgment to defendant David Sideras regarding plaintiff's defamation claim against him. This too is a close question.

Defendants' allegations that plaintiff has presented an "unalleged, alternative theory of defamation" is rejected. Objection at 8. Defendants refer to ¶ 77 of plaintiff's Second Amended Complaint (SAC) as the basis for plaintiff's defamation claim against David Sideras. Objection at 7. This paragraph states:

> As stated herein, in September 2007, then unknown to the plaintiff, HAP opened a fraud investigation at the request of David and Albina Sedaris [sic]. The plaintiff is informed and believes that David and Albina Sedaris [sic] falsely accused the plaintiff of allowing her son to reside at the residence as a tenant or otherwise subletting the residence. The plaintiff is informed and believes that David and Albina Sedaris [sic] published the defamatory accusation of "fraud" to defendant HAP.

Defendants' arguments that plaintiff presented an "alternative theory" in response to defendants' summary judgment motions, allegedly asserting for the first time that "Mr. Sideras defamed [plaintiff] by saying she violated her lease by allowing an unauthorized guest to reside in her apartment," are plainly unfounded. Paragraph 77 to the SAC, quoted in full above, provided requisite notice that plaintiff believed that "David and Albina [Sideras] falsely accused the plaintiff of allowing her son to reside at the residence as a tenant," and that these defendants "published the defamatory accusation of 'fraud' to defendant HAP." Plaintiff's subsequent briefing regarding this matter presented no new "alternative theory" as to the basis of her defamation claim.

The parties agree, however, that a statement that could be deemed defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker.

8  - OPINION AND ORDER

*Lund v. Arbonne Intern., Inc.*, 887 P.2d 817, 823 (Or. Ct. App. 1994) (citation omitted). "A qualified, or conditional, privilege to make a defamatory statement arises when it is made to protect the interests of the plaintiff's employer or is on a subject of mutual concern to the defendant and those to whom it is made." *Id.* (citations omitted).

The parties also agree that this privilege may be lost. Grounds for losing the privilege are: (1) if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; (2) if it is published for a purpose other than that for which the particular privilege is given; (3) if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or (4) if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose. *Id.* (citation omitted).

The Findings and Recommendation concluded that "there is sufficient evidence in the record to create a genuine [dispute] of material fact as to whether Sideras's defamatory statements were made in bad faith or with malicious intent." Findings and Recommendation at 23. The Findings and Recommendation then cited evidence suggesting that plaintiff and the Siderases had a poor relationship, including plaintiff's prior lawsuit against them, plaintiff's allegations of defendants' harassment of her subsequent to that lawsuit, and David Sideras's awareness that his inquiry to HAP would trigger an investigation of plaintiff's compliance with tenancy regulations. *Id.* The Findings and Recommendation concluded that this evidence created a genuine dispute of material fact "as to Sideras's motive and, thus, qualified immunity does not apply." *Id.*

However, the "motive" of the speaker has not been formally recognized as one of the grounds for determining that qualified immunity has been lost. At most, it is true that gleaning a speaker's motive could possibly be used to cast doubt as to whether a statement was published

"for a purpose other than that for which the particular privilege is given," the second of *Lund*'s

grounds. *Lund*, 887 P.2d at 823.

　　In this case, no evidence is presented that supports an inference that the purpose for

which Sideras inquired about plaintiff's compliance with tenancy rules was "other than that for

which the particular privilege is given." Notwithstanding a recitation of the reasons why David

Sideras may dislike plaintiff, his "purpose" for making statements that plaintiff alleges are

defamatory plainly relate to responsibilities and obligations associated with his job. If such

legitimate purposes could be disregarded because of evident animus between parties, the

qualified privilege at issue here could be rendered meaningless.

　　This court acknowledges that the qualified privilege has sometimes been described as

applying in cases in which the statement at issue "was made in good faith and without malice."

*DeLong v. Yu Enterprises, Inc.*, 47 P.3d 8, 10 (Or. 2002) (quoting *Bank of Oregon v.*

*Independent News*, 693 P.2d 35, 38 (Or. 1985)). The Oregon Supreme Court had previously

contemplated the weight to be attributed to the term "malice" in this regard. In *Walsh v.*

*Consolidated Freightways, Inc.*, 563 P.2d 1205, 1210 (Or. 1977), the court quoted extensively

from Prosser's *The Law of Torts*:

> the qualified privilege will be lost if the defendant publishes the defamation in the
> wrong state of mind. The word 'malice,' which has plagued the law of defamation
> from the beginning, has been much used in this connection, and it frequently is
> said that the privilege is forfeited if the publication is 'malicious.' * * * Perhaps
> the statement which best fits the decided cases is that the court will look to the
> primary motive or purpose by which the defendant apparently is inspired.
> Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that
> [t]he privilege is lost if the publication is not made primarily for the purpose of
> furthering the interest which is entitled to protection. * * * Probably the best
> statement of the rule is that the defendant is required to act as a reasonable man
> under the circumstances, with due regard to the strength of his belief, the grounds
> that he has to support it, and the importance of conveying the information.

10 - OPINION AND ORDER

*Walsh*, 563 P.2d at 1210 (quoting W. Prosser, *The Law of Torts*, at 792-96, ¶ 115; footnotes omitted).  Although the court's inclusion of this long quote invoked one reference to "the primary motive or purpose" of the speaker of an allegedly defamatory statement, any implicit adoption of Prosser's reasoning must also include these more direct observations: that the qualified privilege is lost only if the publication was not made primarily for the purpose of furthering the interest which is entitled to protection, and that the "best statement of the rule" is that the speaker is required to act reasonably.

The *Walsh* court was explicit in recognizing that, however the test is described, "[t]he burden of proving an abuse of the qualified privilege . . . rests upon the plaintiff." *Walsh*, 563 P.2d at 1211.  Notwithstanding the existence of possible grounds for David Sideras to view plaintiff with malice, no dispute regarding material facts exists concerning the purposes for which the allegedly defamatory inquiry was made to HAP.  Nothing in the record before the court suggests that Sideras failed to act reasonably, or that his primary purpose for initiating the inquiry at issue was improper.  No other ground for determining that the qualified privilege was lost is applicable.  Accordingly, because Sideras had a qualified privilege to inquire whether plaintiff was authorized to allow her son to reside at the residence as a tenant, this objection is well-taken.  Defendant David Sideras is entitled to summary judgment as to plaintiff's defamation claim.

### 2.     Objections by HAP

The Magistrate Judge also concluded that issues of material fact exist that preclude granting summary judgment to HAP.  This defendant sought summary judgment as to each of plaintiff's claims, arguing that summary judgment is proper regarding plaintiff's discrimination

claims because plaintiff never suffered a denial of benefits from any conduct committed by HAP, and that summary judgment is appropriate as to plaintiff's defamation claim because plaintiff is unable to offer anything more than hearsay assumptions that her housing search after her eviction was more difficult because HAP likely disclosed to potential landlords that plaintiff had been subjected to a fraud investigation.

The Findings and Recommendation construed the "basis" of plaintiff's discrimination claims to be "premised primarily on HAP's failure to provide her reasonable accommodation." Findings and Recommendation at 14. The reasonable accommodation at issue was identified as gaining the approval to allow an additional person to reside in plaintiff's apartment. Findings and Recommendation at 14-15.

After reciting plaintiff's allegations regarding HAP's failure to accommodate her (*e.g.*, allegedly frustrating plaintiff's efforts to obtain approval for a live-in aide, refusing to engage in an "interactive process" to assist her when she faced eviction, "tainting" her residential record by initiating a fraud investigation, "recommending termination," and "maintaining a file which indicated that she had committed fraudulent activity"), the Findings and Recommendation concluded that "there is at least a genuine issue of material fact as to whether HAP failed to accommodate [plaintiff's] needs. . . ." Findings and Recommendation at 15.

This court has undertaken a careful consideration of the record, and has viewed the evidence in a light most favorable to plaintiff. Having done so, this court cannot conclude that there are material factual disputes – supported by any evidence other than plaintiff's assertions – as to whether HAP improperly obstructed any efforts advanced by plaintiff to obtain the

12 - OPINION AND ORDER

necessary approval for a live-in aide, or improperly refused to cooperate with her, or improperly maintained false or discriminatory records about her.

As the Findings and Recommendation recognized, plaintiff cannot defeat summary judgment by relying on her allegations in her Complaint, or by relying upon unsupported conjecture or conclusory statements. Findings and Recommendation at 10 (citation omitted). Instead, plaintiff "must set forth specific facts showing a *genuine* issue for trial." Findings and Recommendation at 11 (internal quotation and citation omitted; emphasis in original). The Findings and Recommendation found persuasive plaintiff's allegation that HAP "frustrated" plaintiff's attempts to receive accommodation, and concluded that there was "at least a genuine issue of material fact that [plaintiff] has suffered a denial of benefits arising from the actions of HAP." Findings and Recommendation at 15.

A *de novo* review of the record fails to support this conclusion. There is no evidence that HAP obstructed any effort by plaintiff to obtain permission for her son – or anyone else – to be approved as a live-in aide. The uncontroverted evidence establishes that plaintiff initiated the live-in aide application process in 2003, and that the effort was abandoned. The failure to obtain this permission cannot reasonably be attributed in any greater degree to HAP than to plaintiff. She was plainly aware of the option, initiated an application in 2003, and chose not to complete the paperwork.

Similarly, the allegation that HAP is not entitled to summary judgment because it failed to engage in what is repeatedly referred to as an "interactive process" is unsupported by evidence beyond plaintiff's conclusory statements. The eviction at issue was launched not by HAP, but by plaintiff's landlord, and was ordered by a judicial tribunal of Multnomah County. Plaintiff refers

to no authority mandating that HAP is required to engage in a specific interactive process to defend or assist plaintiff regarding eviction. Plaintiff's assertions that HAP officials treated her with a "cold shoulder" or invoked general policies regarding limits to accessibility to case managers are insufficient to create possible liability for disability discrimination claims. These allegations also are insufficient to establish a dispute of fact regarding whether HAP unlawfully failed to accommodate plaintiff's needs. This defendant provided Section 8 financial assistance to plaintiff throughout her tenancy with Sideras, extended her eligibility for such assistance three times after Sideras was successful in evicting her from his property, and resumed providing the assistance when plaintiff again found housing.

Plaintiff's references to notations found in confidential files that were maintained by HAP also do not reveal a factual dispute regarding accommodation. Marginalia in plaintiff's files consisting of the terms "fraud," "No Transfer please! Termination Proposed," and an entry recording that the landlord was attempting to evict plaintiff and suggesting that HAP should "wait and see what happens," fails to establish a factual dispute as to whether HAP improperly failed to accommodate plaintiff or deprived her of benefits. There is no evidence that this commentary in the confidential files improperly facilitated an unlawful eviction, interfered with plaintiff's rights as a renter, or inflicted unlawful disability discrimination upon plaintiff. The fact that a fraud inspector for HAP initiated an investigation after receiving information from plaintiff's landlord, and subsequently made notes regarding that investigation, is by itself insufficient evidence to suggest that HAP may have failed to accommodate plaintiff.

Finally, this evidence – viewed in a light most favorable to plaintiff – fails to reveal a factual dispute as to whether HAP unlawfully failed to accommodate plaintiff (or constructively

and unlawfully denied her benefits) following her eviction. As is discussed in greater detail below, the accurate (and confidential) documentation that HAP had undertaken a fraud investigation involving plaintiff is insufficient to support a claim that HAP may be liable for failing to accommodate plaintiff because of her disabilities. Although the Findings and Recommendation construed HAP's conduct as "tainting" plaintiff's residential record, Findings and Recommendation at 15, this court concludes that HAP acted properly (and in reasonable accordance with its duties and responsibilities) when it initiated a fraud investigation after receiving credible information from a landlord. The subsequent evidence that "termination" might be proposed by HAP, and that HAP "maintained a file" regarding efforts to ascertain if plaintiff had committed fraudulent activity, reflects reasonable record-keeping and analysis, not an unlawful intent to discriminate or a failure to accommodate a disabled person's needs. After a careful *de novo* review, this court finds no factual dispute that would preclude granting summary judgment to HAP on plaintiff's disability discrimination claims. Accordingly, this aspect of HAP's objections is affirmed.

Finally, HAP also objects to the Findings and Recommendation's conclusion that plaintiff's defamation claim against HAP must survive summary judgment because "evidence reasonably gives rise to an inference that the contents of Strappini's HAP file were communicated to other Section 8 eligible housing providers." Findings and Recommendation at 17. Defendant argues that this evidence consists only of plaintiff's inadmissible hearsay statements.

The Findings and Recommendation accepted plaintiff's assertion that "[s]ince her eviction, [plaintiff] has 'had difficulty finding stable housing' because HAP . . . recommended termination of her status as a recipient of HAP assistance and listed her as 'no transfer.'"

Findings and Recommendation at 9 (quoting Strappini Aff. ¶ 66). Plaintiff's assertion that she was "turned down by every landlord in HAP's 2008 Housing Portfolio after they 'contact[ed] HAP to determine [her] history and eligibility'" was repeated. *Id.* (quoting Strappini Aff. ¶ 69). The Findings and Recommendation adopted plaintiff's allegation that the prospective landlords "cited" plaintiff's issues with HAP and her previous landlord as grounds for denying her tenancy. Findings and Recommendation at 9-10 (quoting Strappini Aff. ¶ 69).

Plaintiff's evidence regarding publication appears to be primarily or exclusively derived from her own affidavit. The question as to whether such evidence is sufficient to defeat summary judgment is close. However, this court's *de novo* review also establishes that the truth of the allegedly defamatory statements entitles defendant to summary judgment.

Truth is a complete defense to a defamation claim. *Bahr v. Statesman Journal*, 624 P.2d 664, 666 (Or. Ct. App. 1981), *rev. denied*, 631 P.2d 341 (1981). Without objection, the Findings and Recommendation identified plaintiff's defamation claim as based on the indication by HAP in plaintiff's file that she was "the subject of a fraud investigation" and was "evicted from a voucher-eligible property." Findings and Recommendation at 16. Plaintiff's allegation that a housing provider "expressly" advised plaintiff that her housing application was declined "because of HAP's fraud investigation, the 'no transfer' designation, Strappini's difficulties with HAP, or other reasons that could have originated only from Strappini's HAP file or the disclosure of the contents of that file" was also accepted. Findings and Recommendation at 17.

Although defendant persuasively argues that the defamation claim is unsupported by anything more than plaintiff's statements, it is also evident that this alleged defamation pertains to allegedly published statements that are true. Plaintiff *was* evicted from a voucher-eligible

property.  To the extent that a fraud inspector from HAP investigated credible information submitted about plaintiff, plaintiff *was* in fact the legitimate subject of a fraud investigation.

Even if the scope of the defamation claim is expanded to include allegations that other aspects of plaintiff's confidential file were published, there is no basis for concluding that those other aspects could be deemed to be false.  Her file, in fact, contained notes regarding a request not to "transfer," and that "termination" might be proposed.  Accordingly, even assuming (without deciding) that plaintiff's evidence regarding the publication of allegedly defamatory statements is sufficient, HAP is entitled to summary judgment on plaintiff's defamation claim because of the truth of those allegedly defamatory statements.

## CONCLUSION

The court adopts the Findings and Recommendation [86] in part.  The summary judgment motion [52] brought by David and Albina Sideras is granted as to all claims except the disability discrimination claims.  The summary judgment motion [48] brought by HAP is granted in its entirety.

IT IS SO ORDERED.

DATED this $\underline{31}$ day of March, 2011.


_____
Ancer L. Haggerty
United States District Judge